UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

LEON IRA LEWIS,

    Defendant.

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CR-00471 (CBA)

------------------------------------------------------------x

**AMON, United States District Judge:**

Presently before the Court is the government's motion in *limine* to preclude defendant from presenting evidence that he acquired U.S. citizenship through his purported biological father, Leroy Hughue. For the reasons stated below, the Court grants the government's motion.

### BACKGROUND

The defendant is a native of Guyana who was born in that country on April 25, 1964. (See D.E. # 39 at Ex. A.) Previously, the defendant pled guilty to illegal reentry on January 3, 2013. See United States v. Lewis, No. 12-CR-713 (CBA) (E.D.N.Y). After being deported, the defendant was again found in the United States and was again charged with illegal reentry in violation of 8 U.S.C. §§ 1326(a) & 1326(b)(2).

One of the key elements of the offense of illegal reentry that the government must prove is that defendant is a non-citizen alien. 8 U.S.C. § 1326(a). After defendant indicated that he intended to put on evidence to rebut this element on the grounds that he obtained derivative United States citizenship through Mr. Hughue, his purported biological father and United States citizen (D.E. # 24), the government moved to preclude defendant from offering evidence on Mr. Hughue's paternity on relevancy grounds. (D.E. # 39.) Specifically, the government contends that because defendant, based upon his own proffer, cannot meet the statutory requirements for establishing

1

derivative citizenship as a matter of law, any evidence that Mr. Hughue was defendant's biological father would be irrelevant. (Id. at 5.) The defendant opposes the government's motion, contending that he can meet the statutory requirements for derivative citizenship and thus evidence of the paternity of Mr. Hughue is relevant to prove that defendant is not an alien.

## DISCUSSION

The statutory law governing claims of acquired or derivative citizenship is the law that was in effect at the time of the person's birth. See Sessions v. Morales-Santana, 137 S. Ct. 1678, 1687 (2017). The two former sections of the immigration code relevant to this dispute are 8 U.S.C. §§1401 and 1409.[1] Former Section 1401(a)(7) provided: "The following shall be nationals and citizens of the United States at birth: . . . a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . ." "[T]o ensure that the child and the citizen parent have some demonstrated opportunity or potential to develop not just a relationship that is recognized, as a formal matter, by the law, but one that consists of the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States . . . Section 1409(a) . . . imposes a set of requirements on the children of citizen fathers born abroad and out of wedlock to a noncitizen mother that are not imposed under like circumstances when the citizen parent is the mother." Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 64–65 (2001). Specifically relevant here is former Section 1409(a)'s requirement that former Section 1401(a)(7) "shall apply

---

[1] References to 8 U.S.C §§ 1401 and 1409 are to the 1952 edition of the U.S. Code, the version in effect when Lewis was born.

2

as of the date of birth to a child born out of wedlock on or after the effective date of this Act," only "if the *paternity* of such child is *established by legitimation*," 8 U.S.C. § 1409(a) (emphasis added), "under the law of his or her own residence or the law of the parent's residence," Retuya v. Sec'y, Dep't of Homeland Sec., 412 F. App'x 185, 187 (11th Cir. 2010). If defendant cannot show that the paternity of Mr. Hughue was established by legitimation under any of those laws, any evidence about whether Mr. Hughue was in fact defendant's biological father would be irrelevant under Federal Rule of Evidence 402 because, as a matter of law, such evidence could not establish derivative United States citizenship. As defendant does not claim that the mere fact that Mr. Hughue was his biological father could be used to support any defense other than derivative citizenship, such evidence would be properly excluded.

Here, defendant concedes that he is only seeking to "establish paternity by legitimization" under the law of his purported domicile in 1983, which he contends was Guyana. The defendant must therefore show that he was legitimized under the laws of Guyana before he turned twenty-one years of age in order to meet the requirements for establishing derivative citizenship under former Section 1409(a).[2] Defendant contends that establishing legitimacy under Guyanese law required no formal act because "Guyana eliminated any distinction between legitimate and illegitimate children with the Children Born out of Wedlock (Removal of Discrimination Act) of 1983, which was passed before Mr. Lewis turned 21." (D.E. # 24 at 3.) Thus, defendant asserts, he became the "legitimate" child of Mr. Hughue (and thus obtained derivative citizenship), the moment Guyana passed the Removal of Discrimination Act in 1983.

---

[2] Although the parties dispute whether Guyana was defendant's domicile in 1983, the Court assumes without deciding that Guyana was defendant's domicile at that time.

3

The Removal of Discrimination Act, however, does not have the reach that defendant suggests. Although the Removal of Discrimination Act of 1983 amended Guyanese law to eliminate many forms of public discrimination based upon the marital status of a child's parents, at least one court has found that "[t]he Removal of Discrimination Act did not, however, include any broad provisions eliminating *all* distinctions between illegitimate and legitimate children (or between children born in wedlock and out of wedlock)." Gorsira v. Loy, 357 F. Supp. 2d 453, 461 (D. Conn. 2005) (emphasis added). Of critical importance here, Guyana's Legitimacy Act retained a formal mechanism for establishing legitimacy, providing that a child born out of wedlock could be legitimated only through the subsequent marriage of his parents. See Legitimacy Act, Cap. 46:02 § 3 (1975); see also Gorsira, 357 F. Supp. at 461–62 ("[O]ne significant distinction remained in Guyana's laws after the Removal of Discrimination Act: a child born out of wedlock could only be legitimated through the subsequent marriage of his parents."). The Second Circuit has also noted that Guyana's Removal of Discrimination Act is distinguishable from other jurisdictions that have sought to remove all discrimination on the basis of parental marital status, stating that "Guyanese law, which, while similar to that of Jamaica in attempting to eliminate discrimination against illegitimate children, is distinguishable in important respects relating to legitimation." Blake v. Keisler, 249 F. App'x 838, 840 (2d Cir. 2007) (citing Gorsira, 357 F. Supp. 2d at 461).

Here, defendant does not argue that Mr. Hughue ever married his biological mother, but instead argues that Gorsira is distinguishable because the petitioner in Gorsira sought to establish derivative citizenship under a different section of the United States immigration code than defendant. It is correct that the petitioner in Gorsira did not seek relief under former Sections 1401(a)(7) and 1409(a) as defendant does here. Instead, the Gorsira petitioner sought relief under former 8 U.S.C. § 1432, which was in effect when Gorsira's mother was naturalized in 1991.

4

Gorsira, 357 F. Supp. 2d at 455. The text of former Section 1432 provided: where "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the "*paternity*" of the child has not been *"established by legitimation."* Id. at 462. (emphasis added). Accordingly, a review of these statutes demonstrates that former Sections 1409(a) and 1432 both contained the identical operative language: "paternity established (or not established) by legitimation." Despite arguing that the two statutes are different, defendant has not offered a basis to interpret this same phrase differently.

Moreover, the defendant's argument, which essentially contends that he can succeed in establishing derivative citizenship by proffering only DNA evidence of Mr. Hughue's paternity and statements by Mr. Hughue that he was defendant's father, overlooks the importance of the legal construct of legitimation in the context of a child born abroad to a non-citizen mother, seeking to obtain derivative United States citizenship. "[L]egitimacy, or illegitimacy, is a legal condition, a state has the power to define what constitutes it . . . ." Lau v. Kiley, 563 F.2d 543, 549 (2d Cir. 1977). Thus, "the joint conduct of a citizen and an alien that results in conception is not sufficient to produce an American citizen . . . [i]f the two parties engage in a second joint act—if they agree to marry one another—citizenship will follow." Miller v. Albright, 523 U.S. 420, 433 (1998). Congress imposed separate and distinct conditions prior to conferring citizenship upon a child born out of wedlock to a non-citizen mother and a citizen father "to ensure that the child and the citizen parent have some demonstrated opportunity or potential to develop not just a relationship that is recognized, as a formal matter, by the law, but one that consists of the real, everyday ties that provide a connection between child and citizen parent and, in turn, the United States." Nguyen, 533 U.S. at 64–65. In other words, although "[p]aternity can be established by taking DNA

5

samples even from a few strands of hair, years after the birth . . . scientific proof of biological paternity does nothing, by itself, to ensure contact between father and child during the child's minority" and former Section 1409(a)'s requirement for a showing beyond scientific proof of biological paternity ensures that such contact, or opportunity for contact, occurs prior to the conferral of derivative citizenship to a child born abroad. Id. at 67.

Here, there can be no dispute that Guyanese law retained a formal mechanism to establish legitimacy—the marriage of a child's parents. See Legitimacy Act, Cap. 46:02 § 3 (1975). The Removal of Discrimination Act's elimination of some forms of public discrimination is, therefore, largely irrelevant to the instant dispute, as the goal of former Section 1409(a) was to ensure some indication of a reliable connection or bond between the citizen father and child born abroad (and, derivatively to the United States) before the child turns twenty-one years of age and Guyanese law unambiguously proscribes that mechanism as the marriage of the child's parents. See Nguyen, 533 U.S. at 67 ("Congress is well within its authority in refusing, absent proof of at least the opportunity for the development of a relationship between citizen parent and child, to commit this country to embracing a child as a citizen entitled as of birth to the full protection of the United States . . . . If citizenship is to be conferred by the unwitting means petitioners urge, so that its acquisition abroad bears little relation to the realities of the child's own ties and allegiances, it is for Congress, not this Court, to make that determination."). This Court thus finds that former Section 1409(a) obligates defendant to follow that mechanism, which defendant does not suggest he can do. Accordingly, because defendant does not argue that Mr. Hughue ever married his biological mother, he cannot establish derivative citizenship under former Section 1409(a).

Despite the clear statutory text of former Section 1409(a) and Guyana's Legitimacy Act, defendant argues that two Board of Immigration ("BIA") decisions, In re Goorahoo 20 I. & N.

Dec. 782 (BIA 1994) and In re Cross, 26 I. & N. Dec. 485 (BIA 2015) establish that marriage was not required to "establish paternity by legitimization" under Guyanese law. Reliance on these decisions is misplaced because neither interpreted that phrase or awarded derivative citizenship to an alien child born abroad to a non-citizen mother. The BIA in In re Goorahoo held that for purposes of visa preference classification, children born out of wedlock in Guyana are legitimate children of their biological parents. 20 I. & N. Dec. at 784. The BIA there was not called upon to interpret former Section 1409(a) or the phrase "paternity established by legitimation," instead the BIA was interpreting the term "legitimated" in the context of 8 U.S.C. § 1101(b)(1) (1988). Id.

Prior to the BIA's decision in In re Cross, the BIA considered a derivative citizenship claim under former Section 321(a)(3) by a native Guyanese in In Re Rowe, 23 I. & N. Dec. 962 (BIA 2006). Former Section 321(a)(3) provided that an alien born outside of the United States can achieve derivative citizenship upon "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the *paternity* of the child has not been *established by legitimation*." Id. at 963 (emphasis added).[3] The BIA in In Re Rowe held that individuals born out of wedlock in Guyana could derive United States citizenship through the naturalization of their mother so long as they could prove that their father had not confirmed or established their "paternity by legitimation," i.e., that the individual's parents were never married. Id. Thus, the same statutory text at issue here (and in Gorsira) was interpreted by the BIA as requiring marriage in order to "establish legitimacy" under Guyanese law.

---

[3] Former Section 321(a)(3), in effect at the time petitioner claimed derivative citizenship in 1989, was later repealed by the Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a), 114 Stat. 1631, 1632.

7

Defendant's letter of June 26, 2017 argues that In re Goorahoo was reinstated by In re Cross as the operative case defining "paternity established by legitimation" under Guyanese law. (D.E. # 55.) However, In re Cross expressly did not disturb its interpretation of that phrase in In re Rowe, reasoning that "former section 321(a)(3) . . . requires an affirmative act by the father in accordance with the law of the jurisdiction" and "we continue to espouse [Rowe] and believe that it embodies the correct understanding of former section 321(a)(3)." In re Cross, 26 I. & N. Dec. at 490. Thus, contrary to defendant's argument, the BIA in In re Cross held only that the term "legitimation" depends on its statutory context and reinstated In re Goorahoo's holding for the purposes of § 1101(b)(1).[4] Although the analysis conducted by the BIA in In re Cross of the term "legitimated" and "paternity established by legitimation" as having different meanings in different sections of the immigration code may be a bit tortured, nevertheless, In re Cross does not support defendant's claim here.

---

[4] The phrase "paternity established by legitimation" in former Section 1409(a) assumes a critical role in furthering Congress' objective, as it ensures that a demonstrated connection exists with the United States prior to granting the rights and privileges of citizenship to a person otherwise "presume[ed]" to be a non-citizen "by virtue of his foreign birth." Romero-Mendoza v. Holder, 665 F.3d 1105, 1107 (9th Cir. 2011). Unlike former Section 1409(a), the visa preference statute at issue in In re Goorahoo, 8 U.S.C. § 1153(a)(2), independently ensures such a connection exists because the parent is obligated to sponsor the child to receive visa preference status. The same is true of the statute at issue in In re Cross, 8 U.S.C. § 1431(a), as it requires petitioners to demonstrate the child is residing in the United States and is in the "legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence," In re Cross, 26 I. & N. Dec. at 487 (quoting 8 U.S.C. § 1431(a)). Using In re Goorahoo and In re Cross to construe former Section 1409(a) would thus be at odds with that statute's objective because children born abroad could attain United States citizenship so long as they could establish biological paternity and that the father resided in the United States for ten years, even under circumstances such as the present one where the person seeking derivative citizenship had little connection with his father or the United States. See Nguyen, 533 U.S. at 66 ("mandating" derivative citizenship solely through a DNA test would be "contrary to Congress' wishes [because] citizenship [would be granted] by male parentage subject to no condition save the father's previous length of residence in this country").

Defendant also relies on the Ninth Circuit's opinion in Anderson v. Holder, 673 F.3d 1089 (9th Cir. 2012), to argue that, regardless of statutory context, a person automatically qualifies for derivative citizenship whenever a person is born abroad to unmarried parents in a country or state that had "eliminated all legal distinctions between children based on the marital status of their parents or had a residence or domicile in such a country." (D.E. # 24 at 3.) The Anderson court held that a citizen of a state (Arizona) that had removed all legal distinctions between legitimate and illegitimate children did not have to show any formal act of legitimation under former Section 1409(a)—the same statute Lewis seeks relief under. Anderson, 673 F.3d at 1095. The Anderson court further reasoned "that Arizona's statutory scheme . . . specifies no formal mechanism of legitimation whatsoever" and that the state had thus eliminated "all" legal distinction based upon the marital status of a child's parents. Id. at 1101 (emphasis added). Defendant's argument is not persuasive, chiefly because Guyanese law retained formal means of legitimation that Arizona abandoned.

Moreover, even if the Court were to read Anderson as broadly as defendant, the Second Circuit has never held that the purported "elimination of discrimination" on the basis of legitimacy extinguishes all analysis of the process of legitimation as the Ninth Circuit purportedly did in Anderson. To the contrary, the Second Circuit has noted on two occasions that, notwithstanding the Removal of Discrimination Act, Guyanese law retains formal requirements for legitimization. See Poole v. Mukasey, 522 F.3d 259, 265 (2d Cir. 2008) ("As determined in 2006 by the BIA, under Guyanese law, a father legitimates his illegitimate child only if the father marries the child's mother. Poole's parents never married. Accordingly, under Guyanese law, his father never legitimated him."); Blake, 249 F. App'x at 840 ("Guyanese law, which, while similar to that of Jamaica in attempting to eliminate discrimination against illegitimate children, is distinguishable

9

in important respects relating to legitimation."). Furthermore, the Ninth Circuit has specifically noted that Guyana's Removal of Discrimination Act did not go as far as defendant suggests, noting that "Guyan[a] law . . . retained distinctions between children born to married parents and those born out of wedlock." Romero-Mendoza v. Holder, 665 F.3d 1105, 1109 (9th Cir. 2011) ("[T]he changes in Guyanese law did not legitimate children born out of wedlock.").

In sum, this Court finds that former Section 1409(a) requires defendant to show that his parents were married under Guyanese law in order to derive citizenship from Mr. Hughue. Because defendant does not argue Mr. Hughue and his biological mother ever wed, he cannot establish legitimacy under Guyanese law for purposes of former Section 1409(a). Accordingly, any evidence seeking to establish Mr. Hughue as defendant's biological father is irrelevant under Federal Rule of Evidence 402 because, as a matter of law, defendant cannot show that he could derive United States citizenship from Mr. Hughue, and he proffers no other issue on which it bears relevance.

## CONCLUSION

For these reasons, the Court grants the government's motion in *limine* to preclude defendant from offering irrelevant evidence at trial.

SO ORDERED.

Dated: July 7, 2017
      Brooklyn, New York

s/ Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge